**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**July 2, 2025**

# In the Court of Appeals of Georgia

A25A0426, A25A0427. IN THE INTEREST OF M. R., a child (two cases).

McFADDEN, Presiding Judge.

This interlocutory appeal arises in a dependency proceeding. After the Department of Family and Children Services (DFCS) filed a dependency petition regarding five-month-old M. R., the juvenile court held a preliminary protective hearing at which the court found probable cause of dependency and then, over the objection of both DFCS and M. R.'s mother, ordered DFCS to produce its entire file on the child and her parents for an in-camera inspection. Among other things, the mother and DFCS argue on appeal that the juvenile court lacked the authority to order such an inspection sua sponte. We agree, so we reverse that order. Given our

disposition, we do not address the other claims of error asserted by the mother and DFCS.

1. *Procedural history and law governing preliminary protective hearings*

M. R. was born on February 13, 2024, with the drug Fentanyl in her system. So DFCS became involved with the family. On July 11, 2024, DFCS filed a dependency petition with the juvenile court asserting that M. R. was dependent because she had been abandoned by her parents, whom DFCS alleged were homeless and had substance abuse problems, and because she was in the care of a grandparent who did not have legal custody or the authority to address the child's special medical needs.

The juvenile court held a preliminary protective hearing on July 11, 2024. At such a hearing, "the court shall determine: (1) Whether there is probable cause to believe a child is a dependent child; and (2) Whether protective custody of a child is necessary to prevent abuse or neglect pending the hearing on the dependency petition." OCGA § 15-11-146 (a). "If the juvenile court determines that there is probable cause, it may remove the child from the parent's custody and place him or her in the custody of DFCS or another adult family member [or fictive kin] if it finds that '(1) Continuation in his or her home would be contrary to such child's welfare;

or (2) Removal is in such child's best interests.' OCGA § 15-11-146 (b) (3), (c)." *In the Interest of C. E.*, 366 Ga. App. 612 n. 1 (884 SE2d 22) (2023).

"In determining whether a child shall be removed or continued out of his or her home, the court shall consider whether reasonable efforts can prevent or eliminate the need to separate the family[,]" OCGA § 15-11-146 (e), and shall make written findings on the reasonable-efforts issue. OCGA § 15-11-146 (d). DFCS is required to present evidence on the reasonable-efforts issue to aid the juvenile court in making such written findings. OCGA § 15-11-146 (f).

At the preliminary protective hearing in this case, DFCS and M. R.'s mother stipulated that the mother had "unrehabilitated substance abuse issues in addition to a lack of resources and housing as well as funds to provide for the child." DFCS asked the juvenile court to find probable cause that M. R. was dependent based on the stipulation and to maintain the child's placement with her grandparent. DFCS offered to present witness testimony on whether it had made reasonable efforts to prevent M. R.'s removal from her home.

The judge who presided over the hearing found probable cause that M. R. was dependent and that the child should be placed in DFCS custody. She stated that in

light of the family's history with DFCS, the judge to whose division the case had been assigned (who was not the judge then presiding over the hearing), was "requesting DFCS records" to assist with the reasonable-efforts finding. The judge then presiding issued a written order requiring DFCS to produce certain of its documents and records for in-camera inspection by the juvenile court. The order cited OCGA § 15-11-170 (h) in support of the ruling.

A few days later, the judge to whose division the case had been assigned issued an amended order in which she expanded both the reasoning for the order and the documents to be produced. That amended order noted that under OCGA § 15-11-146, the juvenile court was required to make a reasonable-efforts determination and DFCS was required to present evidence on that issue to the court; and that under OCGA § 15-11-145 (h), the court could consider any evidence she found to be relevant, reliable, and necessary to making the determination. The amended order stated that the juvenile court "must review" the documents and records at issue to make an informed ruling on the reasonable-efforts question. To that end, the amended order required DFCS

> to release any and all documents and/or records pertaining to [M. R.] and/or [her] parents, for an in-camera inspection, including but not

4

limited to: any and all contact narratives related to [M. R.] and/or [her] parents, if any; any and all documentation outlining justifications for screen-outs, if any; any and all safety plans relating to [M. R.] and/or [her] parents, if any; any and all documents related to the development and implementation of any safety plans, if any; and any and all service authorizations naming [M. R.] and/or [her] parents as the recipient of authorized services, if any.

(Punctuation and emphasis omitted.)

DFCS and M. R.'s mother jointly moved the juvenile court to reconsider the amended document-production order. They asked the juvenile court to set a hearing on the reasonable-efforts issue and to "allow the requested documentation to be presented in the regular course of due process in the [a]djudicatory setting in accordance with constitutional and statutory due process rights of all parties[.]"

The juvenile court denied the joint motion for reconsideration but issued a certificate for immediate review, and we granted interlocutory appellate review to both M. R.'s mother (in Case No. A25A0426) and DFCS (in Case No. A25A0427). On appeal, DFCS and the mother challenge the juvenile court's authority to compel the production of the records, sua sponte, for in-camera inspection. Because we agree that

the juvenile court exceeded her authority in this manner, we do not reach their other arguments.[1]

2. *Analysis*

OCGA § 49-5-40 (b) prohibits access to the DFCS records at issue in this case except in limited circumstances. That Code section governs "[e]ach and every record concerning reports of child abuse . . . which is currently in the custody of the department, or other state or local agency, or child advocacy center. . . ." Id. See OCGA § 49-1-1 (6) (defining "department" as the Department of Human Services). The DFCS records at issue here — concerning a child who was born with drugs in her system and whose mother stipulated to being unable to care for her — are confidential child abuse records under OCGA § 49-5-40 (b), because they clearly relate to the neglect of a child and OCGA § 49-5-40 (a) (3) (B) defines "child abuse" to include the neglect of a child.

Under OCGA § 49-5-40 (b), access to such records "is prohibited except as provided in Code Sections 49-5-41 and 49-5-41.1." The exception set forth in OCGA

---

[1] DFCS and the mother also challenge the scope of the juvenile court's authority to consider information within the records to make findings of fact and conclusions of law in the proceeding. And the mother argues that the juvenile court erred in having two different judges rule on preliminary-protective-hearing issues.

§ 49-5-41.1 concerns juvenile drug use and does not pertain to this case. So any access the juvenile court has to those records must be under the exception set forth in OCGA § 49-5-41, which permits specified "persons or agencies . . . reasonable access to such records containing reports of child abuse[.]"

Before 2016, OCGA § 49-5-41 permitted a juvenile court to act, sua sponte, to obtain DFCS records for in-camera inspection. Former OCGA § 49-5-41 (a) (2) (2015) permitted access to

> [a] court, by subpoena, upon its finding that access to such records may be necessary for determination of an issue before such court; provided, however, that the court shall examine such record in camera, unless the court determines that public disclosure of the information contained therein is necessary for the resolution of an issue then before it and the record is otherwise admissible under the rules of evidence[.]

But in 2016 the General Assembly deleted this provision and added to OCGA § 49-5-41 (a) a provision that permitted access to "[a] court, by subpoena that is filed contemporaneously with a motion seeking records and requesting an in camera inspection of such records," and set forth a procedure for the court to make such records available to the party seeking them. OCGA § 49-5-41 (a) (11). See Ga. L. 2016, p. 160, § 3.

7

"We presume that such a legislative change to the language of the statute changed the meaning of the statute. And the obvious change in meaning here was to remove [a court's access to child abuse records based upon the court's sua sponte finding of necessity and to limit that access to instances in which a party moves for an in-camera inspection]." *Dias v. Boone*, 320 Ga. 785, 792 (2) (912 SE2d 547) (2025) (citations omitted). No party in this case moved for an in-camera inspection (to the contrary, they opposed such inspection at this stage of proceedings), so the juvenile court could not obtain access to the DFCS records under the exception set forth in OCGA § 49-5-41.

Because neither of the statutory exceptions to OCGA § 49-5-40 (b) apply, the plain language of OCGA § 49-5-40 (b) prohibited the juvenile court from sua sponte ordering production of the DFCS records for an in-camera inspection. The authorities cited by the juvenile court in support of the production order — OCGA §§ 15-11-145 (h) and 15-11-170 (h) — do not require a different conclusion. OCGA § 15-11-145 (h) describes the scope of evidence that a juvenile court may consider in making determinations at a preliminary protective hearing. OCGA § 15-11-170 (h) states that the statutory provisions governing discovery in dependency proceedings do not

"prohibit the court from ordering the disclosure of any information that the court deems necessary for proper adjudication." OCGA § 15-11-170 is the discovery statute for the Dependency Proceedings article of the Juvenile Code. Contrary to the dissent's argument, subsection (h) of that statute merely confirms that its discovery prohibitions do not limit the juvenile court's authority. It does not provide an independent source of additional authority for the juvenile court. Neither Code section purports to establish an additional exception to OCGA § 49-5-40 (b)'s prohibition against access to confidential records concerning reports of child abuse.

The dissent argues that we cannot consider OCGA § 49-5-40 (b)'s prohibition because the parties have not argued it. But the mother argues the general proposition that our Code limits the dissemination of DFCS records "to protect the child and the parents[,]" and in support of this argument she cites to OCGA § 49-5-41, the Code section that immediately follows OCGA § 49-5-40. Both Code sections are part of the same statutory scheme addressing access to confidential child abuse records, and the section to which the mother cites, OCGA § 49-5-41, expressly refers to OCGA § 49-5-40. See OCGA § 49-5-41 (a). Our Appellate Practice Act requires that we try "to bring about a decision on the merits of every case appealed and to avoid . . . refusal to

9

consider any points raised therein[.]" OCGA § 5-6-30; see *Felix v. State*, 271 Ga. 534, 535 (523 SE2d 1) (1999). Given that mandate, we may — and should — consider the statutory limitations on access to confidential child abuse records concerning reports of child abuse, including the prohibition in OCGA § 49-5-40 (b).

*Judgments reversed. Hodges, J., concurs. Pipkin, J., dissents.*

A25A0426, A25A0427. In the Interest of M. R., a child (two cases).

PIPKIN, Judge, dissenting.

Because I conclude that the majority opinion has failed to give due consideration to OCGA § 15-11-170 (h) and because I conclude that OCGA § 49-5-40 (b) does not bar the juvenile court's production order here, I respectfully dissent.

First, I disagree with the majority opinion's conclusion -- reached in passing -- that OCGA § 15-11-170 (h) has no application here because it merely "govern[s] discovery in dependency proceedings." While it may be true that various subsections

of OCGA § 15-11-170 concern discovery procedures in dependency proceedings, subsection (h) is different because it speaks directly to the power of the juvenile court. The language of this section provides that nothing in OCGA § 15-11-170 "shall prohibit *the court* from ordering the disclosure of any information that *the court* deems necessary for proper adjudication." Thus, by its plain terms, subsection (h) affords broad authority to the juvenile court to order the disclosure of "any information" that it deems necessary to the resolution of the dependency petition; this authority is clearly independent of any need or request from a party, and plainly broad enough to confer the juvenile court with the power to issue a sua sponte production order.

Next, I am troubled by the majority opinion's consideration and application of OCGA § 49-5-40 (b). As an initial matter, a review of the record before this Court reveal that this statute was neither raised nor considered below and, further, that neither DFCS nor Mother have cited -- less alone addressed -- this statutory provision in their appellate briefs.[1] On this basis alone I would decline to consider the application

---

[1] I do not mean to fault either DFCS or Mother for failing to address OCGA § 49-5-40 (b); instead, I find it telling that neither party, though aptly represented on appeal, has asserted that this statute has the sweeping application envisioned by the majority opinion. Indeed, in my experience as a former prosecutor, I have found that DFCS works zealously and tirelessly to identify and protect the needs of the children of this State while being mindful of the rights of parents.

of OCGA § 49-5-40 (b) in this case. Moreover, I am not convinced that OCGA § 49-5-40 (b) prohibits the release of the records sought by the juvenile court in this case.

While OCGA § 49-5-40 (b) declares that certain records are confidential and that access to such records is restricted, this provision does not apply to *all records*. Instead, that statute pertains only to "[e]ach and every record concerning *reports of child abuse*." (Emphasis supplied.) By looking to the definitions included in OCGA § 49-5-40, we know that "record" means "documents, books, maps, drawings, computer based or generated information, data, data fields, digital images, photographs, video images, audio recordings, and video recordings," while "child abuse" means "physical injury . . . inflicted upon a child by a parent" or "neglect . . . of a child by a parent." Id. at (a) (3) and (9).

While the word "reports" is not defined, its not difficult to discern here that the juvenile court -- though ostensibly asking for DFCS's entire file[2] -- is actually only

_____

[2] It appears that both DFCS and Mother are attempting to prevent the juvenile court from obtaining the entirety of the file because, following an agreement between the parties , Mother stipulated to various facts underlying the dependency petition and did so "to mitigate potentially damaging information from prejudicing her during the dependency proceedings." According to a joint motion filed below, "the evidence sought by the [juvenile] [c]ourt is information that Mother was seeking to control by agreeing to a stipulation."

interested in records that may assist the court in its reasonable efforts findings, such as "contact narratives," "documentation outlining justifications for screen outs," "documents related to safety plans," and "service authorizations." These documents do not appear to request "reports of child abuse," such as the medical records of Mother or the child (i.e., evidence pertaining to their interaction with fentanyl) or Mother's work, housing, or employment records (which would speak to her ability to provide for the child). Indeed, there would be no need for the juvenile court to request such records given that Mother has seemingly stipulated to the conduct underlying the dependency petition.

Consequently, even if the juvenile court's order is incidently over broad with respect to records protected under OCGA § 49-5-40 -- that is to say, even presuming that the juvenile court is not an entity authorized to receive records concerning "reports of child abuse" -- this Court could certainly construe the juvenile court's order in a way in which it does not run afoul of the applicable statutory protections.

For these reasons, I respectfully dissent, and I would dismiss this appeal as improvidently granted.